UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ALEXANDER ALAZO,<br><br>Defendant. | )<br>)<br>)<br>)<br>)  Crim. Action No. 20-0131 (ABJ)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION & ORDER

Pending before the Court is defendant Alexander Alazo's motion to dismiss Count Four of the indictment, which charges him with Using, Brandishing, and Discharging a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A). *See* Def.'s Mot. to Dismiss Count Four [Dkt. # 55] ("Mot."); Indictment [Dkt. # 18] ("Ind."). Defendant argues that the alleged crimes underlying Count Four – Violent Attack on an Official Premises Using a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 112(a) (Count One), and Willfully Injuring or Damaging Property Belonging To or Occupied By a Foreign Government, International Organization, Foreign Official, or Official Guest, in violation of 18 U.S.C. § 970(a) (Count Two) – do not satisfy the "crime of violence" element of § 924(c). *See* Mot. at 1. Because a violation of 18 U.S.C. § 112(a) qualifies as a "crime of violence," the motion will be denied.

### BACKGROUND

According to the government, during the evening of April 29, 2020, and into the early morning hours of April 30, 2020, the defendant drove from Middletown, Pennsylvania to the Embassy of Cuba in Washington, D.C. to confront his "enemy": members of Cuban organized crime. Statement of Facts [Dkt. # 1-1] ("SOF') at 1; Gov't's Mem. in Support of Pretrial Detention [Dkt. # 4] ("Detention Mem.") at 3, 11. According to the government, the defendant later explained

that for years, he had believed that members of "Cuban criminal organizations" were surveilling him and wanted to harm him and his family. SOF at 2; Detention Mem. at 3, 11. When he arrived at the Embassy, defendant attempted to light a gasoline-soaked Cuban flag on fire, but he was unsuccessful because it was raining. SOF at 2; Detention Mem. at 4, 10. He yelled toward the building, "Shoot me if you want to shoot me!" "I'm here!" "I'm American!" and "I'm Yankee!" Detention Mem. at 4. He then took an AK-47-style semi-automatic rifle and fired thirty-two times at the Embassy, which caused extensive damage. Detention Mem. at 4. Some shots penetrated the building.[1] SOF at 1; Detention Mem. at 4, 6–9.

At the time of the offense, the defendant believed that some people may have been inside the Embassy. Detention Mem. at 12. When the gunshots were fired, the building was indeed occupied, but there were no reported injuries. SOF at 1; Detention Mem. at 4. At approximately 2:13 a.m., Metropolitan Police Department ("MPD") officers arrived at the Embassy to investigate reports of gunshots in the area. Detention Mem. at 4–5. They found the defendant standing in front of the Embassy, holding an American flag and yelling "nonsensical statements." *Id.* at 5. The officers detained the defendant and observed a Century Arms Inc. semi-automatic rifle nearby, which defendant allegedly acknowledged was his. *Id.*

After his arrest, defendant was interviewed twice: first by U.S. Secret Service Protective Intelligence Agents and MPD detectives, and then by a U.S. Department of State Special Agent and a Department of State-Joint Terrorism Task Force Officer. *Id.* at 10. During his interviews, the defendant stated that he was born in Cuba and served in the Cuban army, and eventually migrated to Texas in 2007, claiming political asylum. *Id.* at 11. He reported that he was hearing

---

1   Screenshots of surveillance footage included in the government's detention memorandum show the defendant firing his weapon at 2:06 a.m. Detention Mem. at 4.

voices in his head telling him to protect his family from those affiliated with Cuban organized crime, and that he had been living out of his car for the past nine months out of fear that they were after him.  *Id.* at 11–12.  When asked what he would have done if the Ambassador or another individual had come out of the building, defendant stated that "he would have shot him because he was his 'enemy.'"  *Id.* at 12.  The defendant allegedly believed that he had to shoot first or otherwise he would have been shot himself.  *Id.*

In both interviews, the defendant stated that he had voluntarily sought mental health services at a psychiatric hospital in late February or early March 2020 at his wife's insistence, but he denied that he had any mental illness.  *Id.* at 13.  He stated that he was prescribed an antipsychotic medication at that time, but occasionally misses doses.  *Id.* at 11, 13.  On April 30, 2020, Secret Service agents also interviewed defendant's wife, who corroborated much of his account.  *Id.* at 13.

On July 22, 2020, a federal grand jury returned an indictment charging the defendant with four counts: Violent Attack on an Official Premises Using a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 112(a) (Count One); Willfully Injuring or Damaging Property Belonging To or Occupied By a Foreign Government, International Organization, Foreign Official, or Official Guest, in violation of 18 U.S.C. § 970(a) (Count Two); Interstate Transportation of a Firearm and Ammunition with Intent to Commit a Felony, in violation of 18 U.S.C. § 924(b) (Count Three), and Using, Brandishing, and Discharging a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Four).  *See* Ind. ¶¶ 1–4.  On July 24, 2023, defendant filed a motion to dismiss Count Four of the Indictment, arguing that neither Count One nor Count Two can satisfy the "crime of violence" element of § 924(c).  Mot. at 1.  The government opposes the

motion, *see* United States' Opp. to Mot. [Dkt. # 58] ("Opp."), and the matter has been fully briefed. Def.'s Reply in Support of Mot. [Dkt. # 67] ("Reply").

## LEGAL STANDARD

The Federal Rules of Criminal Procedure require that an indictment must consist of "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The charging document "need only inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense." *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018), quoting *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014); *see United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.'" *Hamling v. United States*, 418 U.S. 87, 117 (1974), quoting *United States v. Carll*, 105 U.S. 611, 612 (1882).

A criminal defendant may move to dismiss an indictment before trial based on a "defect in the indictment," Fed. R. Crim. P. 12(b)(3)(B), including constitutional challenges. *See United States v. Eshetu*, 863 F.3d 946, 952–3 (D.C. Cir. 2017), *vacated in part on reh'g on other grounds*, 898 F.3d 36 (D.C. Cir. 2018). "When considering a motion to dismiss an indictment, a court assumes the truth of those factual allegations." *United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015), citing *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952). A dismissal of an indictment "is granted only in unusual circumstances," because "a court's 'use[ ] [of] its supervisory power to dismiss an indictment . . . directly encroaches upon the fundamental

role of the grand jury.'" *Id.* at 148 (alterations in original), quoting *Whitehouse v. U.S. Dist. Court*, 53 F.3d 1349, 1360 (1st Cir. 1995).

## ANALYSIS

Count Four alleges that defendant used, brandished, and discharged a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A). Defendant predicates his motion to dismiss the charge on Federal Rule of Criminal Procedure 12(b)(1), and he argues that the offenses charged in Counts One and Two – violations of 18 U.S.C. § 112(a) and 18 U.S.C. § 970(a) – do not qualify as "crimes of violence" within the meaning of 18 U.S.C. § 924(c), and therefore, the indictment fails to state the necessary elements of the offense. Mot. at 4.

Section 924(c) provides for an enhanced punishment for a defendant who uses, carries, or possesses a firearm "during and in relation to any crime of violence," which is defined in the statute as a felony that: "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3). In 2019, the Supreme Court held that section 924(c)(3)(B), which has been referred to as the "residual clause" of the provision, is unconstitutionally vague. *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019). Therefore, an offense must satisfy the definition of section 924(c)(3)(A), or the "elements clause," to qualify as a crime of violence. *See id.*

Defendant urges the Court to adhere to the Supreme Court and D.C. Circuit precedent that requires a sentencing court to employ a "categorical," elements-based approach when determining whether a prior offense qualifies as a predicate crime for a sentencing enhancement. Mot. at 4, 6, citing *Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013) and *United States v. Sheffield*, 832 F.3d

296, 313 (D.C. Cir. 2016). Because he can hypothesize several ways in which a violation of section 112(a) or section 970(a) could be committed without what he maintains is the requisite level of force, defendant insists that neither Count One nor Two can provide a basis for a section 924(c)(3) crime of violence sentencing enhancement. Mot. at 7–14. The government also proceeds under the assumption that the categorial approach should be applied, but it takes the position that both counts do charge crimes of violence. Opp. at 2, 6.[2]

Under the categorical approach, courts must look to only "the statutory definitions – *i.e.*, the elements – of a defendant's . . . offenses and *not* to the particular facts underlying those convictions." *Descamps v. United States*, 570 U.S. 254, 261 (2013) (emphasis in original) (internal quotation marks and citation omitted); *see also United States v. Kennedy*, 133 F.3d 53, 56 (D.C. Cir. 1998) ("A 'crime of violence' and a 'serious violent felony' are ordinarily designated as such by looking to the statutory definition of the crime, rather than the evidence presented to prove it."); *Davis*, 139 S. Ct. at 2328 (ruling that by focusing on the "nature" of an offense, "the statutory text [of section 924(c)(3)(B)] commands the categorical approach"). The approach applies "when

---

[2]   Neither party addresses the preliminary issue of whether the categorical approach is relevant to a pre-trial motion to dismiss, even though the Supreme Court precedent cited involved the use of the categorical approach in the sentencing and post-trial context. *See* Mot. at 4, citing *Borden v. United States*, 141 S. Ct. 1817 (2021). This Court has previously expressed skepticism about the applicability of the categorical approach in the context of a pre-trial motion to dismiss, *see United States v. McCallister*, 2016 WL 3072237, at *3 (D.D.C. May 31, 2016) (finding the categorical approach does not apply to a pre-trial motion to dismiss a count of an indictment), and it is not the only court to raise the question. *See, e.g.*, *Weingarten v. United States*, 865 F.3d 48, 59 (2d Cir. 2017) ("The Supreme Court's modern categorical approach jurisprudence is confined to the post-conviction contexts of criminal sentencing and immigration deportation cases."); *United States v. McDaniels*, 2015 WL 7455539 (E.D. Va. Nov. 23, 2015) ("[I]t would make no sense to apply the categorical approach to a pre-trial motion to dismiss an indictment because the practical considerations that gave rise to the categorical approach in the sentencing context are not present on a pretrial motion to dismiss an indictment."). But the Court does not need to resolve the question as it is clear from the plain text of section 112(a) and a categorical analysis that the offense charged in Count One is a crime of violence.

the crime of which the defendant was convicted has a single, indivisible set of elements." *See Descamps*, 570 U.S. at 258.

If the predicate offense is a crime for which a statute sets out elements in the alternative – a so-called "divisible statute" – courts begin the analysis using the "modified categorical approach." *Descamps*, 570 U.S. at 257 (explaining that a divisible statute "sets out one or more elements of the offense in the alternative – for example, stating that burglary involves entry into a building or an automobile"); *see also Mathis v. United States*, 579 U.S. 500, 505 (2016) (a statute that lists elements in the alternative "define[s] multiple crimes"). Under this approach, when looking at a prior conviction, courts "examine a limited class of documents" to identify which alternative element formed the basis for the defendant's conviction, then analyze that element using the categorical approach. *Descamps*, 570 U.S. at 261–62 (explaining that the modified approach is a tool that allows a court to implement the categorical approach when considering a divisible statute and is not an exception to the categorical approach). The documents courts may review include the indictment, jury instructions, the plea agreement, or the transcript of the plea colloquy between judge and defendant. *Id.* at 262–63 , citing *Shepard v. United States*, 544 U.S. 13, 26 (2005).

Defendant argues that 18 U.S.C. § 112(a), charged in Count One, is an indivisible offense, Mot. at 8 n.13, and that it is not a crime of violence because the crime can be committed recklessly. *Id.* at 7. He also contends that the charge in Count Two, 18 U.S.C. § 970(a) is not a crime of violence because it could encompass damage to one's own property and can be committed non-violently. Mot. at 9–14. The Court agrees with the government that the violation of 18 U.S.C. § 112(a) in Count One qualifies as a crime of violence under section 924(c)(3)(A). It cannot make that finding as to section 970(a), but only one crime of violence is necessary to sustain Count Four.

## ANALYSIS

**I.     The alleged violation of 18 U.S.C. § 112(a) in Count One qualifies as a crime of violence under section 924(c)(3)(A).**

Count One charges defendant with a violation of 18 U.S.C. § 112(a), Violent Attack on an Official Premises Using a Deadly or Dangerous Weapon. Ind. at 1–2. Section 112(a) provides:

> Whoever assaults, strikes, wounds, imprisons, or offers violence to a foreign official, official guest, or internationally protected person or makes any other violent attack upon the person or liberty of such person, or, if likely to endanger his person or liberty, makes a violent attack upon his official premises, private accommodation, or means of transport or attempts to commit any of the foregoing shall be fined under this title or imprisoned not more than three years, or both. Whoever in the commission of any such act uses a deadly or dangerous weapon, or inflicts bodily injury, shall be fined under this title or imprisoned not more than ten years, or both.

This provision covers two distinct sets of acts: (1) assaulting, striking, wounding, imprisoning, or offering violence to a foreign official, official guest, or internationally protected person or making *any other violent attack* upon the person or liberty of such person; and (2) making *a violent attack* upon such person's "official premises, private accommodation, or means of transport," if the attack is "likely to endanger his person or liberty." 18 U.S.C. § 112(a) (emphasis added). Thus, it is apparent from the face of the statute that both portions of the statute refer to a crime of violence, but at this stage of the proceedings, it is only necessary to address the second.

**A.     Section 112(a) is divisible.**

The government states that while section 112(a) is a "relatively infrequently charged offense," and there is no binding case law addressing the statute's divisibility, the statute is divisible on its face. Opp. at 6. Given the separate, disjunctive provisions of this statute, the Court finds that the statute is divisible, and that the use of the modified categorical approach is appropriate.

8

*See Mathis*, 579 U.S. at 518 ("[T]he statute on its face may resolve the issue"); *Descamps*, 570 U.S. at 257.

The statute clearly criminalizes two different types of conduct – a violent attack on a foreign official and a violent attack on their premises – and it sets forth alternative elements rather than alternative means of committing the offense. *See Mathis*, 579 U.S. at 514 n.4 (explaining that the modified categorical approach applies when "a statute lists multiple, alternative elements, and so effectively creates 'several different. . . crimes'" rather than alternative means); *United States v. Kim*, 2003 WL 22391190, at *1 (S.D.N.Y. Oct. 20, 2003) ("The defendant made it clear in his plea allocution that he was admitting to the latter [section 112 offense]. That is, that he was making an attack on an official premises, not an official person."); *see also United States v. Allred*, 942 F.3d 641, 650 (4th Cir. 2019) (applying the modified categorical approach to 18 U.S.C. § 1513(b)(1), a statute that similarly differentiates between bodily injury and property damage,³ because "the behavior typically underlying the causation of bodily injury 'differs so significantly' from that underlying damage to property that those statutory phrases cannot plausibly be considered alternative means"). The additional requirement in section 112(a) that the attack on premises be "likely to endanger [the foreign official's] person or liberty" further demonstrates the distinct natures of the proscribed acts, as does the second sentence increasing the penalty that would apply to the premises offense when a defendant "uses a deadly or dangerous weapon" or "inflicts bodily injury." *See Mathis*, 579 U.S. at 518 ("If statutory alternatives carry different punishments, then under [*Apprendi v. New Jersey*, 530 U.S. 466 (2000)] they must be elements" and are divisible).

---

3   Section 1513(b)(1) applies to one who "knowingly engages in any conduct and thereby causes bodily injury to another person or damages the tangible property of another person. . .". 18 U.S.C. § 1513(b)(1).

9

Applying the modified categorical approach, as is appropriate with divisible statutes, the Court may examine a "limited class of documents," *Mathis*, 570 U.S. at 505, such as the indictment, to determine which provision of section 112(a) forms the basis of defendant's charge. Here the indictment specifically charges the defendant with "making a violent attack upon the official premises of a foreign official, official guest, or internationally protected person" – the Cuban Embassy – and it alleges that the attack was "likely to endanger such person or endanger the liberty of such foreign official, official guest, or internationally protected person." Ind. ¶ 1.

The language of section 112(a) leaves little room for discussion about whether the second offense – a "violent attack" on premises – is a crime of violence. And the answer is the same if one measures the elements of the offense against the definition of a crime of violence set forth in section 924(c)(3)(A).

### B. The premises offense in section 112(a) requires use of physical force.

Section 924(c)(3)(A) defines a "crime of violence" as an "offense that is a felony" and "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). But it does not define the term "physical force."

The Supreme Court has defined the term, though, in *Johnson v. United States*, 559 U.S. 133 (2010). *Johnson* involved the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), which calls for enhanced penalties if an individual convicted of a federal firearms offense has three previous convictions for "a violent felony." *Id.* at 136, citing § 924(e). The statute, like section 924(c)(3)(A), defines "violent felony," in part, as any crime punishable by imprisonment for more than one year that "has as an element the use, attempted use, or threatened use of *physical force* against the person of another." 18 U.S.C. § 924(e)(2)(B)(i) (emphasis added). In the course of its opinion, the Supreme Court addressed the meaning of the term "physical force," which was not

10

defined in the statute. *Johnson*, 559 U.S. at 138–39. It acknowledged that the word "force" can have multiple meanings, some that would be satisfied by "the merest touching," and others that would not. *Id.*

The government invited the *Johnson* court to apply the specialized meaning that the term "physical force" bears in the common-law definition of battery, but the Court rejected that approach. "Although a common-law term of art should be given its established common-law meaning . . . we do not assume that a statutory word is used as a term of art where that meaning does not fit. Ultimately, context determines meaning . . .". *Id.* at 139 (internal citations omitted). The Court instead held "that in the context of a statutory definition of '*violent* felony,' the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Id.* at 140 (emphasis in original). And since the decision in *Johnson*, when interpreting statutes like section 924(c)(3)(A), the Supreme Court "has repeated its holding that 'physical force' means 'force capable of causing physical pain or injury.'" *Stokeling v. United States*, 139 S. Ct. 544, 553 (2019) (interpreting the ACCA), citing *Sessions*, 138 S. Ct. at 1220 (interpreting 18 U.S.C. § 16).

Since the term "physical force" is being used to define a "crime of violence" in section 924(c)(3)(A) as well, that context calls for the *Johnson* definition: "force capable of causing physical pain or injury." *See* 559 U.S. at 139. And since the premises offense in section 112(a) specifically prohibits making "a violent attack" upon official premises, it plainly requires "force capable of causing physical pain or injury." *See id.* at 140 ("Even by itself, the word 'violent' . . . connotes a substantial degree of force."). Moreover, the statutory requirement that the violent attack under section 112(a) be "likely to endanger [the official's] person or liberty" also demands "force capable of causing physical pain or injury" that serves to satisfy the statutory requirement.

11

The Court emphasizes that the element that must be established is the use of force *capable* of causing pain or injury; there is no requirement than anyone be injured. [4]

### C. The premises offense in section 112(a) requires a knowing or intentional use of physical force.

Defendant's primary argument in his motion to dismiss is that section 112(a) can be committed recklessly and therefore does not satisfy the *mens rea* requirement for a crime of violence. *See Borden v. United States*, 141 S. Ct. 1817, 1825 (2021) (holding that offenses with a *mens rea* of recklessness do not qualify as violent felonies under the Armed Career Criminal Act). He relies on a single unpublished, non-binding ruling from another district court, which he argues shows that section 112(a) can be committed recklessly. Mot. at 7–8, citing *United States v. Kim*, No. 03 CR. 413 (RPP), 2003 WL 22391190, at *3 (S.D.N.Y. Oct. 20, 2003). But the defendant misconstrues the case.

---

4   Defendant argues since a violation of section 112(a) can be based on an "assault," which can include an "offensive touching" that falls short of physical force, it does not constitute a crime of violence. Mot. at 8 n.13. This would only be relevant if we were faced with an indivisible statute, or if the defendant was charged with the first offense set out in the statute – an attack on the foreign official's person, and neither is the case here. But even if one focuses on the first portion of the statute, the text makes it clear that violence is required. The first clause of the statute penalizes "[w]hoever assaults, strikes, wounds, imprisons, or offers violence to a foreign official . . . *or makes any other violent attack* upon the person or liberty of such person." The words "any other" give meaning to the acts previously listed in the series, and signal that for purposes of this offense, all of the previous verbs in the series are understood to be "violent attacks." *See Yates v. United States*, 574 U.S. 528, 543 (2015) (explaining the principle of statutory interpretation, *noscitur a sociis*, "a word is known by the company it keeps") (internal citations omitted).

Defendant points to an out of circuit decision upholding a section 112(a) conviction for attacking ambassadors by throwing containers of red paint on them. *See* Mot. at 8 n.13, citing *United States v. Gan*, 636 F.2d 28, 30 (2d Cir. 1980). But *Gan* does not advance defendant's position; the issue before the court was whether section 112(a) requires proof of injury or intent to injure and not whether the offense is a crime of violence or requires physical force. *Gan*, 636 F.2d at 29 (finding that there was no requirement to prove injury or intent to injure). Indeed, in that case, it was conceded that the "intentionally violent striking of a protected official" had occurred, *id.* at 29, and the court referred to the defendant's acts as "clearly violent." *Id.* at 30.

In *United States v. Kim*, the defendant pled guilty to making a violent attack on an official premises that was "likely to endanger [the official's] person or liberty." 2003 WL 22391190 at *1. The elements of the offense were not at issue. But because the defendant told the arresting officers that he did not "intend to cause personal injury," the court found that it was necessary to adjust the offense level under the Sentencing Guideline for aggravated assault, U.S.S.G. § 2A2.2, "to reflect Defendant's lack of intent to cause bodily harm, and yet to reflect his admitted reckless endangerment of U.N. employees." *Id.* at *3. The defendant lifts this reference to "reckless endangerment" out of context when he suggests that the sentencing court in *Kim* somehow opined that the section 112(a) offense could be *committed* recklessly.

Section 112(a) applies to one who "makes a violent attack upon" a foreign official's premises; the offense cannot be committed in a non-violent manner. But the statute also requires that the violent attack on a physical structure be "likely to endanger [the official's] person or liberty." As the government puts it, this statutory phrase "refers to the endangerment *caused*, not the defendant's state of mind with respect to the endangerment." Opp. at 13–14 (emphasis added). Moreover, it is irrelevant whether the defendant intended to cause injury; what matters is that the defendant intended to make the violent attack upon the official premises.

The sole circuit to interpret the *mens rea* requirement in section 112(a) was interpreting the first clause – the violent attack on a foreign official provision – and it held that "[t]he intentionally violent striking of a protected official. . . is proscribed by the statute, regardless of intent to injure." *Gan*, 636 F.2d at 29–30. The *Gan* opinion went on to observe that unlike section 112(a), section 112(b) – which is not charged in this case – punishes nonviolent acts, and that the distinction between the two sections "lies in whether the act was violent, not in whether it was intended to injure." *Id.* at 30. The Second Circuit did not have cause to discuss the attack on premises offense

13

in section 112(a) that is at issue here. But the statutory text specifically proscribes "mak[ing] a violent attack," which requires a knowing or intentional use of physical force, and the rulings made in connection with the application of the Sentencing Guidelines in *Kim* do not bear on the categorical analysis of the offense charged in Count One.

For all of these reasons, the Court rejects defendant's contention that section 112(a) is not a crime of violence, and it will deny the motion to dismiss Count Four.

## II. The alleged violation of 18 U.S.C. § 970(a) charged in Count Two does not qualify as a crime of violence under section 924(c)(3)(A).

Since Count Four will proceed with Count One as the predicate violent offense, the issue of whether Count Two qualifies is largely academic. But the Court agrees with the defense that Count Two, which charges defendant with a violation of 18 U.S.C. § 970(a), Willfully Injuring or Damaging Property Belonging To or Occupied By a Foreign Government, International Organization, Foreign Official, or Official Guest, does not meet the test. Section 970(a) provides:

> Whoever willfully injures, damages, or destroys, or attempts to injure, damage, or destroy, any property, real or personal, located within the United States and belonging to or utilized or occupied by any foreign government or international organization, by a foreign official or official guest, shall be fined under this title, or imprisoned not more than five years, or both.

Defendant argues that section 970(a) does not qualify as a crime of violence under section 924(c)(3)(A) because it can be committed by non-violently damaging property. Mot. at 11. Applying the categorical approach, the Court agrees that the least culpable means of violating section 970(a) – by damaging property – encompasses non-violent conduct, and that Count Two therefore does not qualify as a crime of violence.

As discussed above, section 924(c)(3)(A) defines a "crime of violence" as a felony that has as an element the use, attempted use, or threatened use of physical force against the person or

14

property of another," § 924(c)(3)(A), and the Supreme Court has made it clear that "physical force" in this context means "violent force—*i.e.*, force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 134.  When applying the categorical approach to determine whether a violation of section 970(a) falls within the elements clause of section 924(c), one must presume that the defendant's charge "rest[s] upon nothing more than the least of the acts criminalized." *Moncrieffe*, 569 U.S. at 191 (internal quotation marks and alterations omitted), citing *Johnson*, 559 U.S. at 137.  In this case, then, the question would be whether "willfully. . . damag[ing]" foreign property in the United States falls within the scope of section 924(c)(3)(A).

Neither the Supreme Court nor the D.C. Circuit has defined the meaning of "physical force" in the context of a statute that applies to crimes involving property damage.  While the government points to the D.C. Circuit's decision in *United States v. Khatallah*, 41 F.4th 608 (D.C. Cir. 2022), *see* Opp. at 14–19, as support for its argument that section 970(a) requires use of physical force, that case involved an entirely different statute.  In *Khatallah*, the court examined 18 U.S.C. § 1363, which makes it unlawful to "willfully and maliciously destroy[ ] or injure[ ] any structure, conveyance, or other real or personal property," in the United States, or to conspire to do so.  41 F.4th at 624.  The court's analysis focused on the issue of whether section 1363 was divisible, but in doing so, the court agreed with the government's contentions that "[s]ection 1363 is divisible into an inchoate offense of conspiring to injure property and a substantive offense of injuring property, the latter of which is a crime of violence." *Id.* at 632.

The text of section 970(a) is not comparable to the statute at issue in *Khatallah*.  While section 1363 applies to whoever willfully and maliciously "*destroys* or *injures* property," section

15

970(a) applies to whoever willfully "injures, *damages*, or destroys" property.[5] The least culpable conduct in section 970(a) is markedly different from that in section 1363, as damaging property requires less force than injuring or destroying property – and does not necessarily require "force capable of causing physical pain or injury to another person." *See United States v. Ortega-Hernandez,* No. 12-CR-00014 (APM), 2023 WL 4419770, at *6 (D.D.C. July 10, 2023) (finding that section 1363 "does not just define a property crime," but also "creates an enhanced offense that can be committed by destroying property in a way that places life in jeopardy"), citing *Khatallah*, 41 F.4th at 625; *see also United States v. Melaku*, 41 F.4th 386, 393–94 (4th Cir. 2022) (holding that 18 U.S.C. § 1361, which applies to "[w]hoever willfully injures or commits any depredation against any property of the United States," is not a crime of violence under the § 924(c) elements clause because "[a]t least some crimes involving damage to property are wholly dissimilar from crimes involving the use, attempted use, or threatened use of violent, physical force against a person."); *United States v. Bowen*, 936 F.3d 1091, 1103–105 (10th Cir. 2019) (holding that the crime of witness retaliation under 18 U.S.C. § 1513(b), which applies to "[w]hoever knowingly engages in any conduct and thereby causes bodily injury to another person or damages the tangible property of another person," did not categorically require the necessary use of physical force against property to qualify as a "crime of violence" under section 924(c)(3)(A)).

---

5    Section 970(a) also applies to whoever "attempts to injure, damage, or destroy, any property." While an attempted crime of violence does not always qualify as a crime of violence, *see United States v. Taylor*, 142 S. Ct. 2015, 2022 (2022), neither party argues that this language changes the outcome of the case, so the Court does not need to reach this question.

Thus, the Court concludes that section 970(a) can encompass property damage that does not involve "force capable of causing physical pain or injury to another person" and therefore does not categorically qualify as a crime of violence under section 924(c)(3)(A).[6]

## CONCLUSION

Because the violation of 18 U.S.C. § 112(a) alleged in Count One is a crime of violence for purposes of section 924(c)(3)(A), defendant's motion to dismiss Count Four [Dkt. # 55] is **DENIED**.

**SO ORDERED.**

AMY BERMAN JACKSON
United States District Judge

DATE:  December 14, 2023

---

6   Defendant also argues that section 970(a) is not a crime of violence because it "encompasses damage to one's own property" and therefore does not fall within the scope of section 924(c)(3)(A)'s requirement of physical force against the "property of another." Mot. at 9. While this may be technically possible, it seems unlikely since the plain text of section 970(a) requires that the property "belong[ ] to or [be] utilized or occupied by" a foreign government. 18 U.S.C. § 970(a). But because the Court finds that section 970(a) does not qualify as a crime of violence for the reasons discussed, there is no need to address this issue.